UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **KIMBER LEIGH PARKER,** | } |
| | } |
| **Plaintiff,** | } |
| | } |
| v. | }   Case No.:  7:23-cv-01656-RDP |
| | } |
| **UNIVERSITY OF ALABAMA POLICE** | } |
| **DEPARTMENT, et al.,** | } |
| | } |
| **Defendants.** | } |

### MEMORANDUM OPINION

This matter is before the court on the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendants the Board of Trustees of The University of Alabama ("the Board"), University of Alabama Police Department ("UAPD"), Melissa Bailey ("Bailey"), and Calvin Kimbrow ("Kimbrow") (together, "Defendants"). (Doc. # 20). The Motion has been fully briefed (Docs. # 20, 26, 27) and is ripe for decision. After careful review, and for the reasons discussed below, Defendants' Motion (Doc. # 20) is due to be granted in part and denied in part.

**I.     Background**

Since birth, Plaintiff Kimber Leigh Parker ("Plaintiff") has been diagnosed with Cerebral Palsy, a disability which affects "her coordination, muscle control, movement, balance, pelvic pain, need to use restroom facilities frequently, and her ability to walk/stand/sit for medium-to-long durations of time." (Doc. # 19 ¶¶ 37-38). Plaintiff also wears special shoes and uses canes, walkers, and sometimes wheelchairs due to her medical condition. (*Id.* ¶ 39). From October 28, 2013 until December 6, 2021, Plaintiff was a police communications operator, also known as a dispatcher, with UAPD. (*Id.* ¶¶ 40, 46). Her supervisors at work were Defendants Bailey and Kimbrow. (*Id.* ¶ 52).

In her Second Amended Complaint, Plaintiff contends that Defendants repeatedly discriminated against her during her employment with UAPD by denying her reasonable accommodations, insulting her, and ignoring her requests for access to the restroom. (*Id.* ¶¶ 53-93). Specifically, she alleges that, at various times during her employment, she was denied accommodations for her disability, including use of a telephone headset, parking spaces near her work location, and the ability to use the restroom or move from her desk when desired. (*Id.* ¶¶ 63-68, 75). Plaintiff also contends that her coworkers made fun of her disability on numerous occasions by using slurs and making discriminatory comments (*id.* ¶¶ 54, 73, 82-87) and that she was disciplined for tardiness allegedly caused by her disability. (*Id.* ¶ 65). Plaintiff alleges that although she complained of this disability discrimination from April 2021 through November 2021 (*id.* ¶ 159), Defendants never investigated her complaints and the harassment directed at her continued. (*Id.* ¶¶ 162-64). Plaintiff further alleges that after she complained about the discrimination she suffered, Defendants terminated her employment in December 2021. (*Id.* ¶¶ 60, 101-03, 238-40, 293). Plaintiff also contends that following her termination, Defendants have prevented her from obtaining new employment. (*Id.* ¶ 109).

**II.     Standard of Review**

    **A.     Rule 12(b)(1) Standard**

When "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)); *Harris v. Bd. of Trs. Univ. of Ala.*, 846 F. Supp. 2d 1223, 1230 (N.D. Ala. 2012). A motion under Federal Rule of Civil Procedure 12(b)(1) allows a party to assert a defense of lack of subject-matter jurisdiction. A Rule 12(b)(1) motion to dismiss should be

granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Harris,* 846 F. Supp. 2d at 1232 (quoting *Ramming*, 281 F.3d at 161). The burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction (here, that is Plaintiff). *Id.* "A federal district court is under a mandatory duty to dismiss a suit over which it has no jurisdiction." *Se. Bank, N.A. v. Gold Coast Graphics Grp. Partners*, 149 F.R.D. 681, 683 (S.D. Fla. 1993) (citing *Stanley v. Central Intel. Agency*, 639 F.2d 1146, 1157 (5th Cir. 1991); *Marshall v. Gibson's Prods., Inc. of Plano*, 584 F.2d 668, 671-72 (5th Cir. 1978)).

A Rule 12(b)(1) motion can present either a facial or a factual attack. *Willett v. U.S.*, 24 F. Supp. 3d 1167, 1173 (M.D. Ala. 2014) (citing *McElmurray v. Consol. Govt. of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). "Facial attacks on the complaint 'require[] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject-matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion.'" *Garcia v. Copenhaver, Bell & Assocs., M.D.'s P.A.*, 104 F.3d 1256, 1261 (11th Cir. 1997) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990)) (other citations omitted). On the other hand, "factual attacks" challenge "the existence of subject-matter jurisdiction in fact, irrespective of the pleading, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* In other words, when a party raises a factual attack to subject-matter jurisdiction, the court is not obligated to take the allegations in the complaint as true, but may consider extrinsic evidence such as affidavits. *Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1169 (11th Cir. 2011) (citations omitted).

### B. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id*. at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC,* 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)).

4

That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

Complaints that tender "'naked assertion[s]' devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Stated differently, the complaint must allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Twombly*, 550 U.S. at 556.

## III. Discussion

Plaintiff's Second Amended Complaint asserts eight causes of action: Count I – Discrimination and Harassment under Section 504 of the Rehabilitation Act (against all Defendants); Count II – Intimidation, Interference, and Retaliatory Termination under Section 504 of the Rehabilitation Act (against all Defendants); Count III – Disability Discrimination and Failure to Accommodate under Title I of the Americans with Disabilities Act ("ADA") (against the Board and UAPD); Count IV – Disability Discrimination/Termination under Title I of the ADA (against the Board and UAPD); Count V – Interference under Titles I and V of the ADA (against the Board and UAPD); Count VI – Retaliation under Titles I and V of the ADA (against all Defendants); Count VII – Discriminatory Denial of Access and Failure to Accommodate under Title II of the ADA (against all Defendants); and Count VIII – Retaliation, Intimidation, and Interference under Titles II and V of the ADA (against all Defendants). Plaintiff seeks both

injunctive relief and declaratory relief, as well as back pay, reinstatement, compensatory damages, and punitive damages. (Doc. # 19 at 94-95).

In her Response in Opposition to the Motion to Dismiss (Doc. # 26), Plaintiff concedes that UAPD is not a legal entity and thus must be dismissed as a party. (*Id.* at 2). Therefore, only the claims against the Board and the individuals (Bailey and Kimbrow) are in contest.

Defendants have moved to dismiss all claims asserted against them in the action, except those asserted against the Board under the Rehabilitation Act in Counts I and II and those against Bailey and Kimbrow in Counts III through VIII. Below, the court addresses the claims Defendants seek to dismiss.

### A. Plaintiff's Claims Under the Rehabilitation Act Against the Individual Defendants (Counts I and II)

Defendants have only moved to dismiss Plaintiff's claims under the Rehabilitation Act (Counts I and II) against Defendants Bailey and Kimbrow. Defendants argue that the claims should be dismissed because they are redundant of those against the Board since the Board is already a defendant to the Rehabilitation Act claims. (Doc. # 20 at 13-14). Plaintiff has not responded to these arguments. (*See* Doc. # 26).

The court agrees that these claims against the individual defendants should be dismissed. "The Rehabilitation Act prohibits recipients of federal financial assistance from discriminating against individuals with disabilities." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1307 (11th Cir. 2007). Therefore, the Rehabilitation Act does not provide for suit against individuals. *See Pritchard v. S. Co. Servs.*, 102 F.3d 1118, 1119 n.7 (11th Cir. 1996) (holding that liability under the Rehabilitation Act lies against an employer, not the individual officers of an employer); *Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity

suits against state officials.") (collecting cases). Further, "[o]fficial capacity suits are suits against state agencies, not against the people through whom agencies act." *Hobbs v. Roberts*, 999 F.2d 1526, 1530 (11th Cir. 1993). "[O]fficial capacity suits represent 'only another way of pleading an action against an entity of which an officer is an agent,' and a victory against a named individual in an official capacity suit is 'a victory against the entity that employs him.'" *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 167-68 (1985)); *see also McDowell v. Ala. Dep't of Pub. Health*, 2022 WL 988377, at *3 (M.D. Ala. Mar. 31, 2022) (dismissing plaintiff's claims under the Rehabilitation Act against individual defendants since plaintiff had already sued the relevant state agency).

Where a plaintiff has named a state agency in the same suit, any claim against an officer or that agency in his or her official capacity is "duplicative" of the claim against the agency and is "due to be dismissed." *Ginwright v. Dep't of Revenue for Ala.*, 2013 WL 1187943, at *4 (M.D. Ala. Mar. 21, 2013). Thus, Plaintiff's claims under the Rehabilitation Act (Counts I and II) against Bailey and Kimbrow in their official capacities are due to be dismissed since Plaintiff has also brought suit against the Board.

### B.   Plaintiff's Claims Under the ADA Against the Board (Counts III-VII)

Defendants move to dismiss Plaintiff's ADA claims against the Board under Rule 12(b)(1) because they contend that the Board is protected by sovereign immunity, and therefore the court lacks subject-matter jurisdiction over these claims. (*See* Doc. # 20 at 4) (citing *Thomas v. U.S. Postal Serv.*, 364 F. App'x 600, 601 (11th Cir. 2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists.")).

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. "While the text of the Eleventh Amendment 'applies only to suits against a State by citizens of another State,' the Supreme Court has construed the Eleventh Amendment to apply to suits initiated by citizens against their own States." *Dupree v. Owens*, 92 F.4th 999, 1005 (11th Cir. 2024) (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001)). The Eleventh Amendment applies in the instant case because state universities and the boards that govern them are state agencies for purposes of Eleventh Amendment immunity. *See Page v. Hicks*, 773 F. App'x 514, 518 (11th Cir. 2019) ("[S]tate universities, such as UAB are 'arms of the state' and thus are entitled to Eleventh Amendment immunity."); *Pouyeh v. UAB Dep't of Ophthalmology*, 625 F. App'x 495, 498 (11th Cir. 2015) ("The Board [of Trustees of the University of Alabama] is a state agency.") (citing *Harden v. Adams*, 760 F.2d 1158, 1163-64 (11th Cir. 1985) (holding that Alabama's state university boards are state agencies for purposes of the Eleventh Amendment).

"The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Garrett*, 531 U.S. at 363. However, the Eleventh Amendment does not provide an absolute bar for lawsuits brought against a state or its agencies. The Supreme Court has outlined three situations where there is a "surrender" of Eleventh Amendment sovereign immunity:

> (1) when a state waives its Eleventh Amendment sovereign immunity and consents to suit in federal court; (2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so; and (3) when a state official is sued for prospective injunctive relief to end a continuing violation of federal law.

*Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998) (citations omitted). While Plaintiff argues in her Second Amended Complaint that Defendants have waived their immunity by accepting federal funds, this argument misses the mark. Both the Supreme Court and the Eleventh Circuit have held that accepting federal funding does not constitute a waiver of Eleventh Amendment immunity for ADA claims. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246-47 (1985) ("[T]he mere receipt of federal funds cannot establish that a State has consented to suit in federal court."); *Rizo v. Ala. Dep't of Hum. Res.*, 228 F. App'x 832, 835 (11th Cir. 2007). Because the Board is not a state official, the third situation does not apply either. (However, the court discusses it below in its analysis regarding Defendants Bailey and Kimbrow). Therefore, related to the claims brought against the Board, the only dispute is whether the second situation applies. *See James*, 157 F.3d at 1278 ("(2) when Congress, acting pursuant to § 5 of the Fourteenth Amendment, abrogates a state's Eleventh Amendment sovereign immunity by expressing an unequivocal intent to do so . . . .").

The ADA specifically provides: "A state shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202. Although Congress has expressed an intent to abrogate Eleventh Amendment immunity, it also must act pursuant to a valid grant of congressional authority, which is found in Section 5 of the Fourteenth Amendment. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). "Under Section 5, Congress may (1) create a private right of action against the State for actual constitutional violations or (2) respond to 'a pattern of discrimination by the States' by passing legislation to remedy and deter Fourteenth Amendment violations." Dupree, 92 F.4th at 1006 (quoting *Garrett*, 531 U.S. at 365). In other words, "Congress may enact so-called prophylactic legislation that proscribes facially

constitutional conduct, in order to prevent and deter unconstitutional conduct." *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 721-22 (2003).

However, Congress's ability to abrogate state sovereign immunity "is cabined, . . . by a necessity of balancing 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.'" *Dupree*, 92 F.4th at 1006 (quoting *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997)). "Whether a congressional Act passed under § 5 can impose monetary liability upon States requires an assessment of both the 'evil or wrong that Congress intended to remedy,' and the means Congress adopted to address that evil." *Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 36 (2012) (quoting *City of Boerne*, 521 U.S. at 520) (internal citation and quotations omitted).

Regarding the ADA, courts employ a three-step inquiry to determine whether Congress's response is congruent and proportional: "(1) identify which right Congress sought to enforce when it enacted the ADA; (2) examine whether a demonstrated record of unconstitutional discrimination existed to support Congress's decision that preventative legislation was warranted; and (3) determine whether the ADA provision at issue is an appropriate response to the history of mistreatment." *Dupree*, 92 F.4th at 1006 (citing *Nat'l Ass'n of the Deaf v. Fla.*, 980 F.3d 763, 771 (11th Cir. 2020)). This is the lens through which the court must assess whether the Board is immune from claims arising under Titles I, II, and V of the ADA.

### i. Title I of the ADA (Counts III-VI)

Title I of the ADA prohibits certain employers, including state employers, from "discriminat[ing] against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of

employment." 42 U.S.C. § 12112(a). This section of the ADA requires employers to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." § 12112(b)(5)(A).

In *Board of Trustees of the University of Alabama v. Garrett*, the Supreme Court held that the Eleventh Amendment bars private individuals from filing suit against states in federal court under Title I of the ADA. 531 U.S. 356, 374 (2001). The Court found that Title I of the ADA exceeded Congress's Section 5 authority to proscribe constitutional conduct to remedy and deter Fourteenth Amendment violations for two reasons: "(1) Title I's broad sweep was not sufficiently targeted to remedy or prevent unconstitutional discrimination in public employment; and (2) Congress failed to identify a pattern of irrational state-employment discrimination against the disabled." *Leverette v. Ala. Revenue Dep't*, 453 F. Supp. 2d 1340 (M.D. Ala. 2006) (citing *Garrett*, 531 U.S. at 372-74). Although Congress found a *general* pattern of discrimination aimed at the disabled, "the great majority of these incidents do not deal with the activities of the *States*." *Garrett*, 531 U.S. at 369 (emphasis added). Because the Court found that there was no pattern of unconstitutional employment discrimination by the states, it held that Title I was not a valid exercise of Congress's Section 5 power. For this reason, Title I did not validly abrogate the Board's Eleventh Amendment immunity.

Therefore, it is clear that the Board is immune from Plaintiff's claims under Title I of the ADA (Counts III-VI). Thus, these claims against the Board are due to be dismissed.

### ii. Title II of the ADA (Counts VII and VIII)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "Circuits are split on whether Title II applies to disability discrimination in public employment, with some holding that it does not apply in this context, leaving Title I as the exclusive ADA remedy for claims of disability discrimination in both public and private employment." *Culverhouse v. S. Union Cmty. Coll.*, 2021 WL 2417154, at *5 (M.D. Ala. June 14, 2021) (citing *Brumfield v. City of Chicago*, 735 F.3d 619, 622 (7th Cir. 2013); *Elwell v. Okla. Ex rel. Bd. of Regents of the Univ. of Okla.*, 693 F.3d 1303 (10th Cir. 2012); *Zimmerman v. Or. Dep't of Just.*, 170 F.3d 1169 (9th Cir. 1999)). However, the Eleventh Circuit has held that Title II encompasses employment discrimination by public entities. *Bledsoe v. Palm Beach Cnty. Soil & Water Conservation Dist.*, 133 F.3d 816, 820 (11th Cir. 1998).

In *Garrett*, the Supreme Court left open the question of whether Congress abrogated Eleventh Amendment immunity under Title II claims. "[I]t chose not to address whether individuals 'may sue their state employers for damages under Title II of the ADA.'" *Leverette*, 453 F. Supp. 2d at 1344 (M.D. Ala. 2006) (citing *Garrett*, 531 U.S. at 360 n.1). However, the Court later held in *United States v. Georgia*, 546 U.S. 151 (2006) that "Title II validly abrogates sovereign immunity when it proscribes conduct that actually violates the Fourteenth Amendment." *Leverette*, 453 F. Supp. 2d at 1344. But, our circuit "it left to the lower courts to determine, on a case-by-case basis, the much thornier question of whether conduct that violates Title II but does not violate the Fourteenth Amendment is nevertheless valid under Congress's § 5 enforcement power." *Id.* (citing *Georgia*, 546 U.S. at 882).

In her Response in Opposition to the Motion to Dismiss (Doc. # 26), Plaintiff relies on the Supreme Court's holding in *Tennessee v. Lane*, 541 U.S. 509 (2004) and argues that Title II abrogates sovereign immunity "for the purpose of effectuating Congress's intent of combating discrimination in the administration of public programs and services." (*See* Doc. # 26 at 5 (citing *Lane*, 541 U.S. at 522-23)). However, *Lane* is inapposite here. In *Lane*, the Supreme Court took an as-applied approach to Title II claims – concluding that abrogation of Eleventh Amendment immunity under Title II is a context-specific question. 541 U.S. at 516-17. Specifically, the *Lane* Court held that Title II claims regarding access to the courts for the disabled were not barred by the Eleventh Amendment. *Id.* Therefore, *Lane* did not involve employment discrimination and its holding was "narrowly crafted and limited to cases implicating the accessibility of judicial services." *Clifton v. Ga. Merit Sys.*, 478 F. Supp. 2d 1356, 1367 (N.D. Ga. 2007). As Defendants correctly state in their reply brief, "[t]he *Lane* Court specifically addressed Title II's application to access to the court system, not any other context." (Doc. # 27 at 4 (citing *Lane*, 541 U.S. at 530-31)); *see also Dupree*, 92 F.4th at 1007 ("[T]he patterns addressed in *Lane* do not relate to employment discrimination."). Based on the Court's as-applied analysis in *Lane*, abrogation of Eleventh Amendment immunity under Title II is a context-specific question.

Although neither the Supreme Court nor the Eleventh Circuit have ruled on whether employment discrimination claims under Title II are barred by the Eleventh Amendment, many district courts in the Eleventh Circuit have. For example, the district court in *Leverette v. Alabama Revenue Department* held that "because, with Title I, Congress did not validly abrogate sovereign immunity with regard to state-employment discrimination against the disabled, Congress did not do so with Title II either." 453 F. Supp. 2d at 1345. In support of its holding, the court explained that "it would be illogical to find that history of state discrimination against the disabled in

13

employment is insufficient to permit Congress to enact Title I, but that same history is somehow sufficient to allow Congress to fashion Title II." *Id.* Other district courts have adopted this same reasoning. *See, e.g., Clifton v. Ga. Merit Sys.*, 478 F. Supp. 2d 1356 (N.D. Ga. 2007) ("Congress did not validly abrogate sovereign immunity with regard to state employment discrimination actions under Title II."); *Williamson v. Ga. Dep't of Hum. Res. & Ga. Reg'l Hosp.*, 150 F. Supp. 2d 1375, 1381 (S.D. Ga. 2001) ("Because Congress failed to adequately identify a pattern of irrational State conduct when it enacted Title II, it improperly abrogated the States' Eleventh Amendment immunity."). The court agrees with the reasoning in *Clifton*: "In sum, a plaintiff should not be permitted to circumvent the holding of *Garrett* immunizing states from employment discrimination claims brought pursuant to Title I of the ADA by commencing suit under Title II, a subchapter which lacks any of the procedural protections afforded employers under Title I." 478 F. Supp. 2d at 1368.

Based on these cases, the court concludes that the Board is also immune from Plaintiff's claims under Title II of the ADA (Counts VII and VIII).

### iii.     Title V of the ADA (Counts V, VI, and VIII)

"A retaliation claim under Title V is predicated on an individual suffering a harm [after] asserting rights under a separate ADA provision." *Dupree*, 92 F.4th at 1007. Here, Plaintiff brings three different claims involving Title V. In her claims asserted in Counts V, VI, and VIII. Under Counts V and VI, the separate ADA provision coupled with Title V is Title I, and with respect to her claim asserted in Count VIII, the separate ADA provision is Title II.

Plaintiff's claims under Title I and Title V (Counts V and VI) can be quickly disposed of. In *Dupree v. Owens*, the Eleventh Circuit held that sovereign immunity applies to Title V claims when brought in conjunction with Title I claims. 92 F.4th at 999. In support of its holding, the

14

Eleventh Circuit found that there was no evidence of a pattern of retaliation or disability discrimination by the states. *Id.* Because there was no evidence of such pattern, the court concluded that "Title V cannot serve as a congruent and proportional remedy when paired with a Title I claim." *Id.* at 1007. The Eleventh Circuit relied on the Supreme Court's ruling in *Garrett*, which found that sovereign immunity was not abrogated under Title I. *See id.* ("*Garrett* demonstrated that Title I was not a valid exercise of Congress' Section 5 power because of the lack of evidence regarding a pattern of unconstitutional employment discrimination by the States.") (citing *Garrett*, 531 U.S. at 374). As the Eleventh Circuit explained, "when the underlying provision – here, Title I – does not allow a plaintiff to assert a claim against the State, it logically follows that a Title V claim that is based on the exercise of a right arising only from Title I cannot be levied against the State." *Id.* Because *Dupree* clearly states that sovereign immunity is not abrogated when Title V claims are paired with Title I claims, Plaintiff's Counts V and VII against the Board are due to be dismissed.

The claim asserted in Count VIII is more nuanced because it involves a Title II and Title V claim, which the Eleventh Circuit did not address in *Dupree*. And, as stated above, neither the Supreme Court nor the Eleventh Circuit have spoken on the applicability of Eleventh Amendment immunity to employment discrimination claims under Title II. Therefore, this appears to be a question of first impression. Based on the analyses in *Garrett*, *Dupree*, and the district court cases addressing Title II employment discrimination claims, the court concludes that Plaintiff's claim arising under Titles II and V (Count VIII) should also be dismissed because it is barred by the Eleventh Amendment.

Again, in *Dupree*, the Eleventh Circuit concluded that because sovereign immunity was not abrogated under Title I (pursuant to the Supreme Court's holding in *Garrett*), then it follows

that sovereign immunity was also not abrogated under a Title V claim which relied on a Title I claim. 92 F.4th at 1007. Consistent with this reasoning, because the court has concluded that sovereign immunity is not abrogated under a Title II claim, then the court now concludes that sovereign immunity is also not abrogated under a Title V claim that relies on a Title II claim. Therefore, Count VIII is due to be dismissed.

### iv. Neither Money Damages nor Injunctive Relief are Recoverable Against the Board

To be clear, the Board is immune from both monetary damages *and* injunctive relief under Titles I, II, and V of the ADA. In her Response in Opposition to the Motion to Dismiss (Doc. # 26), Plaintiff contends, "[w]hile monetary damages may not be recoverable, the Courts have been clear that injunctive relief is." (*Id.* at 3). However, this characterization misses the mark. In *Garrett*, the Supreme Court specifically answered the question of whether states could be sued in federal court for money damages under the ADA. The Court did not consider injunctive relief because respondents were only seeking money damages under Title I. *Garrett*, 531 U.S. at 356. Plaintiff appears to rely on a footnote in *Garrett* in asserting that injunctive relief may be sought against the Board. The footnote states "Title I of the ADA still prescribes standards applicable to the States. Those standards can be enforced by the United States in actions for money damages, as well as by private individuals in actions for injunctive relief under *Ex Parte Young*." 531 U.S. at 374 n.9. Plaintiff, however, incorrectly reads this footnote. Private individuals may only seek injunctive relief under *Ex Parte Young* against individual *state officers* in their official capacities. The *Ex Parte Young* exception does not apply to the Board, which is a state entity and not a state officer. *See Edwards v. Learfield Commc'ns, LLC*, 687 F. Supp. 3d 1297, 1303 (N.D. Fla. 2023) ("*Ex Parte Young*'s narrow exception to immunity 'has no application in suits against the States and their agencies, which are barred regardless of the relief sought.'") (quoting *P.R. Aqueduct & Sewer*

*Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)) (internal citation omitted). The Board is thus immune from suit for both monetary damages and injunctive relief under Titles I, II, and V of the ADA.

### C. Plaintiff's Claims under the ADA Against Bailey and Kimbrow (Counts VI-VIII)

As discussed above, one of the three situations where Eleventh Amendment immunity is "surrendered" is when a state official is sued for prospective injunctive relief to end a continuing violation of federal law. *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1278 (11th Cir. 1998) (citations omitted). Under the Supreme Court's decision in *Ex Parte Young*, a plaintiff challenging a state official's action on federal grounds may seek prospective injunctive relief. 209 U.S. 123 (1908). *See also Nat'l Ass'n of the Deaf v. Fla.*, 980 F.3d 763 (11th Cir. 2020) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984)). Again, as the Supreme Court explained in *Garrett*, the "ADA still prescribes standards applicable to the States. Those standards can be enforced by . . . private individuals in actions for injunctive relief under *Ex Parte Young*." 531 U.S. at 374 n.9.

Defendants concede in their response that claims for injunctive relief may be brought against Bailey and Kimbrow in their official capacities pursuant to the doctrine set out in *Ex Parte Young*. (Doc. # 27 at 1). However, they contend that Plaintiff may only seek *prospective* injunctive relief from Bailey and Kimbrow. The court agrees. "The *Ex Parte Young* exception permits lawsuits against state officers that seek prospective equitable relief to end continuing legal violations, though crucially, it does not extend to claims for *retrospective* relief." *Culverhouse v. S. Union Cmty. Coll.*, 2021 WL 2417154, at *3 (M.D. Ala. June 14, 2021) (citing *Edelman v. Jordan*, 415 U.S. 651, 664-66, 668 (1974)). Moreover, "[t]he ADA provides only prospective injunctive relief for violations, and does not allow for damages for past discrimination or past

17

remedied violations." *Norkunas v. Seahorse NB, LLC*, 444 F. App'x 412, 416 (11th Cir. 2011) (citing 42 U.S.C. § 12188(a)(1)). "If the prospective relief sought is 'measured in terms of a monetary loss resulting from a past breach of a legal duty,' it is the functional equivalent of money damages and *Ex Parte Young* does not apply." *Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs.*, 225 F.3d 1208, 1220 (11th Cir. 2000) (quoting *Edelman*, 415 U.S. at 669). Therefore, Plaintiff may only seek prospective injunctive relief as it applies to her ADA claims against Defendants Bailey and Kimbrow.

### IV. Conclusion

For the reasons outlined above, Defendants' Motion to Dismiss (Doc. # 20) is due to be granted in part and denied in part. An order consistent with this memorandum opinion will be entered contemporaneously.

**DONE** and **ORDERED** this December 10, 2024.

_____
**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE